ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
*Attorneys for Plaintiff*
40 Wall Street, Suite 2833
New York, NY 10005
Tel.: (212) 267-2101

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

LANDRUM BREWER SHETTLES JR.,

                         Plaintiff,

        -against-

ABT LIMOUSINE SERVICE, INC., GEORGE
ABT, SR., GEORGE ABT, JR., and PATRICIA
ANNE ABT,

                     Defendants.

-------------------------------------------------------------X

**Index No:**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Landrum Brewer Shettles Jr. ("Shettles"), by his attorneys, Robert Wisniewski

P.C., as and for his Complaint against Defendants ABT Limousine Services, Inc. ("ABT" or the

"Corporate Defendant"), George Abt Sr. ("George Sr."), George Abt Jr. ("George Jr.") and

Patricia Anne Abt ("Patricia") (collectively, the "Individual Defendants"), states as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action against all Defendants to recover unpaid wages, unpaid

overtime wages, and other actual damages, liquidated damages, and reasonable attorneys' fees

under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) ("FLSA") and

the various wage orders promulgated by the U.S. Department of Labor and codified in 29 C.F.R.

§ 500 *et seq.*, the New York state common law; and the New York Labor Law ("NYLL"),

including, without limitation, Articles 6 and 19 of NYLL, and the various rules and regulations promulgated by the New York State Department of Labor codified in Chapter II of Title 12 of New York Codes, Rules and Regulations ("N.Y.C.R.R.").

2.      Defendants provide luxury limousine services to private individuals in the New York City metropolitan area.

3.      Plaintiff was employed by Defendants as a limousine chauffeur from November 20, 2017, until his termination by Defendants on March 21, 2019.

4.      When Plaintiff complained to Defendants about not being properly compensated and lodged a complaint with the Department of Labor (the "DOL"), Defendants retaliated against Plaintiff by first cutting his shifts, and eventually, terminating his employment.

## PARTIES, JURISDICTION AND VENUE

5.      Plaintiff Shettles, at all relevant times herein, was and is a resident of the State of New York, New York County.

6.      Plaintiff worked for Defendants as a chauffeur from November 20, 2017 until his termination by Defendants on March 21, 2019.

7.      Defendant ABT was and is a corporation duly organized under and existing by virtue of the laws of the State of New York and having its principal place of business at 310 East 75th Street, New York, New York 10021.

8.      On information and belief, Defendant George Sr. was and is a resident of the State of New York, New York County, and was an officer, director, president and/or owner of the Corporate Defendant.

9.      On information and belief, Defendant George Jr. was and is a resident of the State of New York, New York County, and was an officer, director, president and/or owner of the

2

Corporate Defendant.

10.     On information and belief, Defendant Patricia was and is a resident of the State of New York, New York County, and was an officer, director, president and/or owner of the Corporate Defendants.

11.     On information and belief, the Individual Defendants are owners, majority shareholders, officers, directors, and/or managers of the Corporate Defendant, and each Individual Defendants, as one of the ten largest shareholders of Corporate Defendant, is individually responsible for unpaid wages under the New York Business Corporation Law. See BCL Notices attached hereto as **Exhibit 1**.

12.     This Court has personal jurisdiction over the Corporate Defendant in that it is incorporated in the State of New York.

13.     This Court has personal jurisdiction over the Individual Defendants in that they are all citizens and residents of New York.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. §1337 (Regulation of Commerce). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, because those claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

15.     Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of Defendants travel between states and operate vehicles and use other goods and materials made outside New York, and Defendants are thus employers subject to the jurisdiction of the FLSA.

3

16.     This Court is a proper venue for this action, pursuant to, among other grounds, 28

U.S.C. §1391(b), because all Defendants reside in New York.

## JURY DEMAND

17.     Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

18.     Defendants own and operate ABT, a small limousine company providing

"luxury" chauffeured vehicles for hire to customers from locations inside and outside of New

York City.

19.     ABT's headquarters is located at a parking garage at 10 West 66th Street, New

York, NY 10023. Defendants maintain an office and a fleet of approximately eleven (11) luxury

for-hire vehicles at its headquarters. Defendants also maintain an executive office at 310 East

75th Street, New York, New York 10021.

20.     Defendants employ approximately eleven (11) chauffeurs and two (2) dispatchers.

21.     On or about November 20, 2017, Plaintiff Shettles entered into an oral contract

with Defendants whereby he agreed to work for ABT as a part time chauffeur in exchange for a

minimum wage and tips.

22.     Plaintiff worked for Defendants from approximately November 20, 2017 until his

retaliatory termination by Defendants on March 21, 2019.

23.     From November 20, 2017 until the first week of March 2019, Plaintiff worked

four (4) days a week, with no set starting or ending time for each shift. Plaintiff reported to work

whenever Defendants needed him and finished when his services were no longer needed.

24.     Plaintiff approximates that on average, he worked seven (7) to twelve (12) hours a

day, for a total of thirty (30) to forty (40) hours a week with occasional overtime.

4

25.     At all relevant times, Plaintiff was compensated for his work pursuant to the so-called "tip credit" wage, which allowed Defendants to pay to Plaintiff a reduced "cash wage" by applying an allowance for the tips Plaintiff received from customers.

26.     During most weeks, Plaintiff on average received more than $4.00 in customer tips per hour of work.

### Facts Relating to Defendants' Wage and Hour Violations

27.     Both the FLSA and the NYLL require employers to pay their employees at least the respective federal or state minimum wage for every hour worked. If the state minimum wage exceeds the federal minimum wage, the FLSA requires that employees be paid at the state rate.

28.     At all relevant times, Plaintiff was an employee of the Defendants and Defendants were his employers within the meaning of both the FLSA and the NYLL.

29.     Plaintiff was a non-exempt employee was subject to the higher minimum wage promulgated under the NYLL as codified in the relevant wage order in 12 N.Y.C.R.R. § 142 (the "Wage Order").

30.     Throughout Plaintiff's employment with Defendants, the New York City minimum wage for employees of employers with eleven (11) or more employees was as follows:

   a.   $11.00 per hour as of December 31, 2016;

   b.   $13.00 per hour as of December 31, 2017; and

   c.   $15.00 per hour as of December 31, 2018.

31.     Because Plaintiff received tips as part of his compensation, Defendants were entitled to offset Plaintiff's basic minimum wage by "tip credits" in the maximum amount of:

   a.   $2.70 as of December 31, 2016;

   b.   $3.20 as of December 31, 2017; and

    c.  $3.65 as December 31, 2018.

32.     Accordingly, Plaintiff's proper minimum "cash wage" rate was:

    a.  $8.30 as of December 31, 2016;

    b.  $9.80 as of December 31, 2017; and

    c.  $11.35 as December 31, 2018.

33.     Defendants violated the FLSA and NYLL by compensating Plaintiff at a cash wage rate that was impermissibly lower than the requisite minimum "cash wage" rate under the Wage Order. Specifically:

    a.  From November 20, 2017 to December 31, 2017, Defendants compensated Plaintiff at a rate of $8.00 per hour and calculated the overtime rate based on the $8.00 rate whilst the relevant Wage Order called for a minimum "cash wage" rate of $8.30;

    b.  From January 1, 2018 to December 31, 2018, Defendants compensated Plaintiff at a rate of $8.00 per hour and calculated the overtime rate based on the $8.00 rate whilst the Wage Order called for a minimum "cash wage" rate of $9.80;

    c.  From January 1, 2019 to February 21, 2019, Plaintiff was compensated at a "cash wage" rate of $8.00 per hour and calculated the overtime rate based on the $8.00 rate whilst the Wage Order called for a minimum "cash wage" rate of $11.35; and

    d.  From February 21, 2019 to February 27, 2019, Defendants compensated Plaintiff at a rate of $10.00 per hour and calculated the overtime rate based on the $10.00 rate whilst the Wage Order called for a minimum "cash wage" rate of $11.35.

34.     Furthermore, Defendants did not compensate Plaintiff at the basic New York City minimum wage during weeks that Plaintiff did not receive any tips from customers.

35.     Plaintiff did not receive any customer tips during three (3) entire weekly pay periods in December 2017, March 2018, and August 2018.

36.     Further yet, Defendants did not compensate Plaintiff for the required extra hour's pay when Plaintiff's spread of hours reached or exceeded ten (10) in one day. Under the Wage Order, Defendants were obligated to compensate Plaintiff for each such hour of pay at the basic New York City wage rate.

***Facts Relating to Defendants' Violations of NYLL §§ 195.1 and 195.3***

37.     NYLL § 195.1 requires employers to provide employees at the time of hiring and at any time the pay rate changes with a notice containing, among others, the employee's rate of pay and its basis; allowances claimed as part of the minimum wage, including tip allowances, and any applicable overtime rate of pay.

38.     Further, NYLL § 195.3 requires employers to furnish their employees with accurate wage statements listing, among others, the dates of work covered by that payment of wages; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

39.     Here, Defendants never provided Plaintiff with any written notice relating to the conditions of his pay at the time of hiring or at any time his rate of pay changed.

40.     Defendants also never furnished Plaintiff with accurate wage statements listing the amount of allowance claimed by as "tip credit" and did not record it on a weekly basis as a separate item in the wage record.

41.     Defendants were not entitled to apply the tip credit allowances to reduce Plaintiff's basic hourly wage because Defendants never recorded the tip credit allowances that

7

they claimed "on a weekly basis as a separate item in the wage record," as required by the Wage Order.

***Facts Relating to Unlawful Deductions for Tickets***

42.     NYLL § 193 prohibits an employer from requiring an employee to make any payments "by separate transaction unless such charge or payment is permitted as a deduction from wages …"

43.     Defendants demanded that Plaintiff provide exceptionally fast and personalized service to customers and demanded Plaintiff's availability at all hours of the day and his days off. As a result of these demands, Plaintiff received several tickets for violations of traffic and parking laws and similar infractions.

44.     Fines arising from Plaintiff's "on the clock" violations of traffic and parking laws do not constitute a permitted deduction from wages.

45.     In violation of NYLL § 193, Defendants demanded that Plaintiff pay the amount of any tickets received while "on the clock."

46.     Defendants' demands for payment for tickets were done with knowledge of their impropriety and were intentional and willful.

***Facts Relating to Defendants' Retaliation Against Plaintiff***

47.     Throughout his employment for Defendants, Plaintiff strenuously opposed Defendants' unlawful wage and labor practices, but Plaintiff needed to work to pay his bills and to fund his career in music.

48.     In or about late January 2019, Plaintiff had had enough. Plaintiff approached George Sr., ABT's President, and pointed out that his $8.00 per hour rate of pay at was below the permissible minimum wage.

8

49.     Plaintiff's remarks infuriated George Sr. George Sr. began to hurl expletives at Plaintiff and scoffed that no chauffeur at ABT will ever be paid more than $8.00 an hour.

50.     It was apparent to Plaintiff that George Sr. would not support bringing his wage rates to the lawful minimum.

51.     Shortly thereafter, on February 15, 2019, Plaintiff emailed Defendant Patricia requesting that Defendants pay him the "correct minimum wage." Patricia never responded to Plaintiff's email.

52.     In or about mid-February 2019, Plaintiff contacted the New York State Department of Labor (the "DOL") to seek guidance regarding Defendants' wage violations.

53.     Pursuant to DOL's advice, on February 27, 2019, Plaintiff drafted a letter demanding back wages he believed Defendants owed him. Plaintiff forwarded the letter to Patricia and the DOL.

54.     The effect of Plaintiff's letter was immediate: when Plaintiff received his weekly paycheck on March 1, 2019, Defendants had raised his cash wage rate form $8.00 per hour to $10.00 per hour. Defendants' attempt at bringing Plaintiff's wage rate to the legal minimum, however, was still insufficient. Under the Wage Order, Plaintiff was entitled to a minimum "cash wage" rate of $11.35 per hour.

55.     On March 8, 2019 – Defendants raised Plaintiff's wage rate again to $11.50 per hour, effectively bringing it into compliance with the provisions of the Wage Order.

56.     Just as things appeared to be heading for the better at work, Defendants began to cut Plaintiff's work hours. On March 8 and March 9, 2019, Plaintiff was sent home by Patricia after working only three (3) hours. On March 10, Patricia texted Plaintiff "You are not needed today." The following week, Patricia sent Plaintiff home after only three (3) hours of work on

March 14 and March 16, 2019.

57.     On March 21, 2019, Defendant George Jr. informed Plaintiff that Plaintiff was fired. In so firing Plaintiff, George Jr. referred to Plaintiff as a "lowlife" and accused Plaintiff of trying to ruin his family business by going to the DOL, instigating other chauffeurs to do the same, and dealing drugs to the chauffeurs.

58.     At one point in the exchange, George Jr. declared that Plaintiff was recording their conversation, so he grabbed Plaintiff's cellphone and violently smashed it. George Jr. then marched Plaintiff out of Defendants' office and to the street, at which time Plaintiff left. Later that day, at 9:58 p.m., Plaintiff received an email from Patricia stating that "Effective immediately, [Plaintiff's] employment at ABT Limousine Service has been terminated."

**_Defendants' Failure to Pay Proper Wages was Willful_**

59.     Defendants as employers have certain statutory obligations towards their employees, including paying employees for all of the hours they worked at a wage rate equal to or greater than the applicable minimum wage rate, paying the overtime premium of one-and-a-half times their regular wage rate for each hour worked in excess of forty (40) per week, and making, keeping, and preserving proper payroll records.

60.     Defendants were aware of their requirement to pay Plaintiff at the proper applicable wage rate and at the overtime premium rate of one-and-a-half times his regular rate for each hour worked in excess of 40 per week.

61.     Nevertheless, Defendants failed to pay Plaintiff his proper wage rates, including overtime wages.

62.     Defendants further willfully disregarded and purposefully evaded record keeping requirements of the NYLL by failing to generate and maintain proper payroll records relating to

the conditions of Plaintiff's pay at the time of hiring or at any time thereafter.

63.     As such, the various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

64.     At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

**Facts Relating to the Defendants' Status as Joint Employers**

65.     At all relevant times herein, Corporate Defendant ABT was and is controlled by the Individual Defendants.

66.     At all relevant times herein, the Individual Defendants conducted business as the Corporate Defendant.

67.     At all relevant times herein, each Individual Defendant acted for and on behalf of the Corporate Defendant, with the power and authority vested in him as the owner, officer, agent, and employee of the Corporate Defendant, and acted in the course and scope of their duty and function as owner, agent, employee, and officer of the Corporate Defendant.

68.     At all relevant times herein, the Individual Defendants directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks to Plaintiff.

69.     The Individual Defendants had control over the conditions of employment of Plaintiff, including his hiring and firing, his work schedule, the rate and method of payment of his wages, and the maintenance of his employment records.

70.     At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendant.

71.     As a matter of economic reality, all Defendants are joint employers of Plaintiff;

11

and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

***Facts Relating to Piercing the Corporate Veil***

72.     Upon information and belief, Individual Defendants are owners of Corporate Defendant.

73.     Upon information and belief, in conducting the affairs of the Corporate Defendant, the Individual Defendants failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

74.     Upon information and belief, the Individual Defendants used the assets of the Corporate Defendant as their own and/or otherwise commingled personal assets with the assets of the Corporate Defendant.

75.     As alleged herein, the Individual Defendants used the Corporate Defendant in order to circumvent a statute or statutes, or to accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

76.     Corporate Defendant is an alter-ego of the Individual Defendants; and, as will be established at trial, for the purpose of the claims made by Plaintiff herein, Corporate Defendant has no separate legal existence from the Individual Defendants. As such, the Corporate Defendant and the Individual Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## FIRST CLAIM FOR RELIEF
### <u>(Breach of Contract against the Corporate Defendant)</u>

77.     Plaintiff repeats and realleges each and every allegation previously made herein.

78.     Plaintiff agreed to perform work and services for the Defendants.

12

79.     Plaintiff satisfactorily supplied labor in connection with, and in furtherance of, the work required under his employment contract with the Defendants and in doing so, complied with the terms of his employment agreement with the Defendants and was therefore entitled to wages he rightfully earned while working for the Defendants.

80.     Corporate Defendant failed or refused to pay the Plaintiff wages to which he was entitled under his employment agreement with the Defendants.

81.     Corporate Defendant's failure or refusal to pay the Plaintiff wages to which he was entitled under his employment agreement with the Defendants constituted a breach of Plaintiff's employment agreement with the Defendants.

82.     That by virtue of the foregoing breach of contract by the Defendants, Plaintiff has been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiff should have been paid as contemplated by his employment agreement with the

83.     Corporate Defendant, less amounts actually paid to the Plaintiff, with an award of interest, costs, disbursements, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (FLSA Minimum Wage and Overtime against All Defendants)

84.     Plaintiff repeats and realleges each and every allegation previously made herein.

85.     Pursuant to the FLSA and the Wage Orders issued under the FLSA at 29 C.F.R. § 500 *et seq.*, Plaintiff was entitled to certain minimum and overtime wages, which Defendants intentionally failed to pay in violation of such laws.

86.     Specifically, Defendants compensated Plaintiff for his hours worked at a rate below the minimum wage and at a correspondingly lowered overtime rate for the hours he worked in excess of forty (40) per week.

87.     Defendants knew or should have known that they were required to pay their employees overtime wages, but knowingly and willfully disregarded this requirement.

88.     Wherefore Plaintiff seeks a judgment against Defendants for unpaid regular and overtime wages, the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to Plaintiff, along with an award of liquidated damages, attorneys' fees, interest, and costs as provided for by FLSA.

### THIRD CLAIM FOR RELIEF
### (NYLL Minimum Wage, Overtime and Spread of Hours against All Defendants)

89.     Plaintiff repeats and realleges each and every allegation previously made herein.

90.     Pursuant to NYLL Articles 6 and 19, NYLL § 198, and the Wage Order issued under the NYLL at 12 N.Y.C.R.R. §§ 142, Plaintiff was entitled to certain hourly minimum wages, overtime wages, and other wages, all of which the Defendants intentionally failed to pay in violation of such laws.

91.     As a result of the foregoing, Plaintiff has been damaged, and Defendants have profited thereby.

92.     Wherefore Plaintiff seeks a judgment against the Defendants for all wages which should have been paid, but was not paid, pursuant to the NYLL and the Wage Order issued thereunder and the other provisions of NYLL; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiff, along with an award of attorneys' fees, interest and costs as provided under NYLL §§ 198 and 663.

### FOURTH CLAIM FOR RELIEF
### (Unlawful Deductions under NYLL § 193)

93.     Plaintiff repeats and realleges each and every allegation previously made herein.

14

94.    NYLL § 193 prohibits an employer from requiring an employee to make any payments "by separate transaction unless such charge or payment is permitted as a deduction from wages …"

95.    Defendants repeatedly forced Plaintiff to pay expenses incurred while on the clock that Plaintiff did not agree in writing to cover.

96.    As a result, Plaintiff been damaged, and Defendants have profited thereby.

97.    Wherefore, Plaintiff seeks a judgment in an amount to be determined at trial, together with attorneys' fees, interests, and costs.

## FIFTH CLAIM FOR RELIEF
### (NYLL Wage Notice Violation Against All Defendants)

98.    Plaintiff repeats and realleges each and every allegation previously made herein.

99.    NYLL § 195.1 mandates as of January 2011 that at various statutorily-delineated events each employee employed by Defendants receive for signature a Wage Notice, which has to contain the following wage information: (i) the basis of the employee's wage rates e.g., by the hour, shift, day, week, salary piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

100.    Plaintiff never received for signature the Wage Notice and never received any other paystubs or documents which might show the information required by NYLL § 195.1.

101.    Accordingly, Plaintiff seeks damages allowed by the statute as well as attorney fees, costs and disbursements.

15

## SIXTH CLAIM FOR RELIEF
### (NYLL Wage Statement Violation Against All Defendants)

102.     Plaintiff repeats and realleges each and every allegation previously made herein.

103.     Pursuant to NYLL § 195.3 and the 12 N.Y.C.R.R. §142-3.8, employers must provide an accurate wage statement with each payment of wages. Wage statements must include, among other information, "the dates of work covered by that payment of wages; name of employee; address and phone number of employer; rate or rates of pay and basis thereof" and, where applicable, the overtime rate of pay.

104.     In violation of the NYLL, Defendants did not furnish Plaintiff and others similarly situated with wage statements that show the employee's rate or rates of pay, the number of hours worked, or record the proper pay rate for Plaintiffs' overtime hours.

105.     Accordingly, Plaintiff seeks damages allowed by the statute for himself and others similarly situated as well as attorney fees, costs and disbursements.

## SEVENTH CLAIM FOR RELIEF
### (FLSA Retaliation Against All Defendants)

106.     Plaintiff repeats and realleges each and every allegation previously made herein.

107.     Plaintiff is a person covered by and intended to benefit from the provisions of the FLSA.

108.     Plaintiff complained to Defendants about the manner in which he was paid and about his unpaid regular and overtime wages in violation of the FLSA.

109.     Defendants ignored Plaintiff's complaints and continued to refuse to pay him at the proper minimum wage Plaintiff was entitled to under FLSA.

110.     In committing such retaliatory acts, Defendants violated Section 215(a)(3) of the FLSA, which prohibits the discharge of any employee for complaining about a FLSA violation.

111.    Wherefore, Plaintiff seeks damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF
### (NYLL Retaliation Against All Defendants)

112.    Plaintiff repeats and realleges each and every allegation previously made herein.

113.    Plaintiff is a person covered by and intended to benefit from the provisions of the NYLL.

114.    Plaintiff complained to Defendants about the manner in which he was paid and about his unpaid regular and overtime wages in violation of the NYLL.

115.    Defendants ignored Plaintiff's complaints and continued to refuse to pay him at the proper minimum wage Plaintiff was entitled to under NYLL.

116.    After Plaintiff's lodged his last complaint to Defendants and the DOL, Defendants fired Plaintiff and provided his workplace activism as reason therefor.

117.    In committing such retaliatory acts, Defendants violated Section 215 of the NYLL, which prohibits the discharge of any employee for complaining about a NYLL violation.

118.    Wherefore, Plaintiff seeks damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

## NINTH CLAIM FOR RELIEF
### (Battery against Defendant George Jr.)

119.    Plaintiff repeats and realleges each and every allegation previously made herein.

120.    That Defendant George Jr., by grabbing Plaintiff's cell phone out of Plaintiff's hand and deliberately smashing it intentionally, willfully, wantonly, and maliciously intended to cause and did cause a harmful contact with Plaintiff's person.

121.    That such actions by George Jr. were willful, intentional, and unwarranted, and

were without any just cause or provocation.

122.     That as a result of said battery of Plaintiff by George Jr. Plaintiff has suffered loss of property and has been subject to public humiliation, embarrassment, and ridicule and has suffered extreme mental and emotional anguish.

123.     Wherefore, Plaintiff demands judgment on this Ninth Claim for Relief, against George Jr., for damages in the amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
### (Assault against Defendant George Jr.)

124.     Plaintiff repeats and realleges each and every allegation previously made herein.

125.     That Defendant George Jr., by grabbing Plaintiff's cell phone out of Plaintiff's hand and deliberately smashing it intentionally, willfully, wantonly, and maliciously placed Plaintiff in apprehension of imminent harmful contact.

126.     That such actions by George Jr. were willful, intentional, and unwarranted, and were without any just cause or provocation.

127.     That as a result of said assault of Plaintiff by George Jr., Plaintiff has suffered loss of property and has been subject to public humiliation, embarrassment and ridicule and has suffered extreme mental and emotional anguish.

128.     Wherefore, Plaintiff demands judgment on this Tenth Claim for Relief, against George Jr., for damages in the amount to be determined at trial.

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

a.     Compensatory damages;

b.     Liquidated damages;

18

    c.       Back pay and front pay;

    d.       Pre-judgment interest;

    e.       Punitive damages: and

    f.       Plaintiffs' costs and reasonable attorneys' fees;

Together with such other and further relief as the Court deems just.

Dated: New York, New York
       July 16, 2020

ROBERT WISNIEWSKI P.C.

By: _____

Robert Wisniewski, Esq.
*Attorneys for Plaintiff*
40 Wall Street, Suite 2833
New York, New York 10005
(212) 267-2101

# EXHIBIT 1

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES
PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS
CORPORATION LAW**

TO:    ABT LIMOUSINE SERVICE, INC.

      PLEASE TAKE NOTICE, that  LANDRUM BREWER SHETTLES , as an employee of
the above corporation intends to demand, pursuant to the provisions of Section 630 of the
Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing
to him as a laborer, servant and/or employee of the above corporation for services performed  by
him for the above corporation within the six (6) years preceding the date of this notice from the
ten largest shareholders of the above corporation, and who have expressly authorized the
undersigned, as his attorney, to make this demand on his behalf,

      HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual
business hours, the minutes of the proceedings of the shareholders and record of shareholders of
the above corporations and to make extracts therefore on or after five (5) days from receipt of
this notice.

      Dated: New York, New York
          July 16, 2020

                    ROBERT WISNIEWSKI P.C.


                    By: */s/ Robert Wisniewski*
                    Robert Wisniewski
                    *Attorneys for Plaintiff*
                    40 Wall Street Suite 2833
                    New York, New York 10005
                    (212) 267-2101

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED

TO:     GEORGE ABT, SR.

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that LANDRUM BREWER SHETTLES JR., intends to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of ABT LIMOUSINE SERVICE, INC. for all debts, wages and/or salaries due and owing to him as a laborer, servant and/or employee of the said corporation for services performed by him for the said corporation within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as his attorney, to make this demand on his behalf.

Dated: New York, New York
       July 16, 2020

ROBERT WISNIEWSKI P.C.

By: /s/ Robert Wisniewski
Robert Wisniewski
*Attorneys for Plaintiff*
40 Wall Street Suite 2833
New York, New York 10005
(212) 267-2101

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR
SERVICES RENDERED**

TO:    GEORGE ABT, JR.

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business
Corporation Law of New York, you are hereby notified that LANDRUM BREWER SHETTLES
JR., intends to charge you and hold you personally liable, jointly and severally, as one of the ten
largest shareholders of ABT LIMOUSINE SERVICE, INC. for all debts, wages and/or salaries
due and owing to him as a laborer, servant and/or employee of the said corporation for services
performed by him for the said corporation within the six (6) years preceding the date of this
notice and have expressly authorized the undersigned, as his attorney, to make this demand on
his behalf.

Dated: New York, New York
         July 16, 2020


                                    ROBERT WISNIEWSKI P.C.


                                    By: */s/ Robert Wisniewski*
                                    Robert Wisniewski
                                    *Attorneys for Plaintiff*
                                    40 Wall Street Suite 2833
                                    New York, New York 10005
                                    (212) 267-2101

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR
SERVICES RENDERED**

TO:     PATRICIA ANNE ABT

        PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business
Corporation Law of New York, you are hereby notified that LANDRUM BREWER SHETTLES
JR., intends to charge you and hold you personally liable, jointly and severally, as one of the ten
largest shareholders of ABT LIMOUSINE SERVICE, INC. for all debts, wages and/or salaries
due and owing to him as a laborer, servant and/or employee of the said corporation for services
performed by him for the said corporation within the six (6) years preceding the date of this
notice and have expressly authorized the undersigned, as his attorney, to make this demand on
his behalf.

        Dated: New York, New York
               July 16, 2020

                                        ROBERT WISNIEWSKI P.C.


                                        By: */s/ Robert Wisniewski*
                                        Robert Wisniewski
                                        *Attorneys for Plaintiff*
                                        40 Wall Street Suite 2833
                                        New York, New York 10005
                                        (212) 267-2101