ROBERT WISNIEWSKI  P.C.          17 STATE  STREET, SUITE 820 • NEW YORK, NY 10004
ATTORNEYS-AT-LAW                 T EL: (212) 267-2101 • WEB: www.rwapc.com

October 26, 2021

Hon. Mary Kay Vyskocil, USDJ
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
        *VIA ECF*

**Re: Shettles Jr. et al. v. ABT Limousine Service, Inc. et al**
**Docket No.: 20-cv-05489 (MKV)**

Dear Judge Vyskocil,

I represent Plaintiffs in the above matter. Counsel for the parties are jointly submitting the Fair Labor Standards Act ("FLSA") settlement agreement ("Agreement") (**Exhibit 1**) as well as my firm's invoice for fees and costs (**Exhibits 2**) and backup documentation for costs and disbursements (**Exhibit 3**) for Your Honor's review and approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2nd Cir. 2015).

**1.      Introduction**

The Agreement (**Exhibit 1**) submitted for approval resolves Plaintiffs' claims arising out of their employment with Defendants. The parties seek a dismissal of their FLSA claims with prejudice, which requires court approval. *See  Cheeks* 796 F.3d 202 (holding that given the unique considerations underlying the FLSA, any settlement of claims under the FLSA, which seeks dismissal with prejudice, can only be made pursuant to the approval of the court or of the Department of Labor). Pursuant to the Agreement, Plaintiffs release all of their claims, including their  FLSA claims, asserted in the Amended Complaint.

The parties respectfully request that, upon Your Honor's review and satisfaction that the settlement is fair and reasonable and that the fees and costs are duly earned, Your Honor issue an order approving the Agreement as well as the attorney's fees and costs, and dismissing Plaintiffs' claims with prejudice.

This matter was settled after a prolonged period of negotiations, which included two days of mediation in this Court's ADR program as well as subsequent discussions between the parties. What followed, was a long period of challenging but good-faith negotiations over the terms of the overall settlement of Plaintiffs' claims, which has culminated with the instant submission of the Agreement.

### 2.       Background of the Action

First, Plaintiffs bring this action to recover unpaid wages, unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs under the FLSA (29 U.S.C. § 201 et seq.); Articles 6 and 19, and § 198-b of the New York Labor Law ("NYLL") and the various wage orders promulgated by the US Department of Labor and codified in 29 C.F.R. § 500 et seq. and the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-146.

Second, Plaintiff Shettles brings additional claims against Defendants related to the retaliatory termination of his employment by Defendants due to Shettles' complaint about wage violations filed with the New York Department of Labor as well as tort claims under New York common law against Defendant George Abt, Jr.

Defendants deny Plaintiffs' allegations and allege that Plaintiffs were properly paid and fully compensated for their work and that they did not terminate Plaintiff Shettles in retaliation. Defendant Georg Abt, Jr. further denies Plaintiff Shettles' tort claims.

### 3.       The Settlement Terms Are Reasonable and Fair

As the 2nd Circuit held, a dismissal of claims under the FLSA with prejudice requires approval by either the Department of Labor or the courts. ***Cheeks, supra***, 796 F.3d at 202; *see* also ***Lynn's Food Stores, Inc. v. United States***, 679 F.2d 1350, 1354 (11th Cir. 1982). Fairness of a settlement is assessed by "examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." ***D'Amato v. Deutsche Bank***, 236 F.3d 78, 83 (2nd Cir. 2001).

At bar, the Agreement calls for Defendants to pay a settlement of $65,000.00 of which Plaintiffs are each to receive $21,000.32. *See* Settlement Agreement paragraph 4 (**Exhibit 1**). The settlement is to be paid within ten (10) days of this Court's approval of the Agreement.

It is submitted that the terms of the Agreement represent a reasonable compromise between Plaintiffs' claims and the defenses proffered by the various Defendants.

When considering whether a settlement is fair, the Court should examine the following five factors: (1) "the plaintiff's range of possible recovery"; (2) "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'"; (3) "the seriousness of the litigation risks faced by the parties"; (4) "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) "possibility of fraud or collusion". ***Wolinsky v. Scholastic, Inc***., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015). However, the principal question to resolve is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." ***Le v. SITA Info Networking Computing USA, Inc.***, 2008 WL 724155 at *1 (E.D.N.Y.2008) (*quoting* ***Lynn's***

*Food Stores v. United States*, 679 F. 2d 1350, 1354 (11th Cir. 1982)).

As regards the first and third ***Wolinsky*** factors – the "range of possible recovery" and "the seriousness of the litigation risks faced by the parties," the settlement of $65,000.00 represents a very favorable result to Plaintiffs in light of the allocation of the burden of proof on Plaintiffs and litigation risks faced by Plaintiffs and Defendants.

The value of Plaintiffs' claims for alleged underpaid wages and overtime wages was $4,554.60 for Plaintiff Shettles and $9,932.18 for Plaintiff Springborg as well as like amounts for liquidated damages. In addition, each Plaintiff had claims for Defendants' violations of NYLL Section 195 in the amount of $10,000.00. Moreover, Plaintiff Shettles had claims of $22,017.25 for alleged retaliatory termination and a claim of $15,000 against Defendant Geroge Abt, Jr. for alleged tort claims. In sum, the best case scenario for Plaintiffs' alleged claims was: $56,126.45 for Plaintiff Shettles and $29,864.36 for Plaintiff Springborg, or a total of $85,990.81. Thus, a net settlement, after attorney fees and costs, of 47% Plaintiffs' best case scenario damages represents a very favorable result for Plaintiffs.

While the burden of proof was on Plaintiffs, Plaintiffs could point to the fact that Defendants' payroll records were inadequate such that they could take advantage of the lowered burden of proof under the Supreme Court's ***Mount Clemens*** precedent, which would have allowed the fact finder to accept Plaintiff's recollection as to the days and hours worked. On the other hand, Defendants had documents and expected witness testimony from their managers and employees and third parties that supported their defenses and minimized and even contradicted Plaintiffs' claims.

The settlement is also favorable from Defendants' perspective. Defendants vociferously denied any liability. However, Defendants understood the risks inherent in proceeding through trial, including being potentially liable for higher amounts for liquidated damages and prejudgment interest, as well as substantially increased costs and attorney's fees for their own attorneys and additional amounts that might be owed for for Plaintiff's attorney fees and costs.

As to the second ***Wolinsky*** factor, settling the parties' claims at this point will avoid continuing litigation costs for all parties. Put bluntly, Plaintiffs could have gone through the entire trial and obtained a judgment for less than they are to receive under the Agreement, could have lost or could have faced post trial motions and appeals. Plaintiffs also faced very substantial litigation costs in that they would most likely have to depose a large number of Defendants' witnesses and retain expert witnesses to prove certain of their claims.

There was one more concern which weighed heavily toward settlement: Plaintiffs' legitimate concerns about the collectability of a judgment against the Defendants. ***Lliguichuzhca v. Cinema 60 LLC***, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013)("Case law recognizes that potential difficulty in collecting damages militates in favor of finding an [FLSA] settlement reasonable."); *see* also ***Cabrera v. Roselea Int 's Services***, 2011 WL 7096634 at *4 (M.D. Fla. Dec. 30, 2011).

Corporate Defendant practically ceased operations during the COVID pandemic and for all practical purposes, appeared to be judgment proof. Plaintiffs' hopes thus lay in proving that the Individual Defendants could be considered joint employers, such that they would be jointly and severally liable with the Corporate Defendant for Plaintiffs' claims. But there were great doubts that they would be financially able to satisfy a significant judgment. Plaintiffs were also afraid that the Individual Defendants had either no assets or had assets jointly held with their spouses, which could not be reached by creditors. Of course, Plaintiffs also faced the possibility that some, if not all, Defendants could file for bankruptcy and thus vitiate any judgment obtained by Plaintiffs.

The fourth and fifth *Wolinsky* factors examine whether the settlement agreement is the product of arm's-length bargaining between experienced counsel and whether there was any possibility of fraud or collusion.

Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See*, ***Aponte v. Comprehensive Health Management, Inc.***, 2013 WL 1364147 at *4 (S.D.N.Y. 2013).  And "[a] strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length." ***Thompson v. Metro. Life Ins. Co.***, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). At bar, the parties were represented by competent counsel on both sides whose area of practice focuses on employment litigation.

At bar, Plaintiffs fully participated in the two mediation sessions. During the mediations, Plaintiffs consulted with counsel and each other and were involved in fashioning numerous demands. The two mediation sessions were presided over by a very experienced mediator from the Court's ADR Department. Following the mediation, the parties continued their settlement discussions whilst conducting discovery. The negotiating process consisted of a long, hard-fought process of fleshing out the facts of the case, the terms of the agreement, reviewing documents and then drafting the Agreement ultimately accepted by the parties. The above indicate that the negotiating process was at arm's length and there has been no fraud or collusion in the process.

At bar, Plaintiffs are giving Defendants a release of all of their employment claims in exchange for a very favorable settlement. Prior to recommending this, I ensured that Plaintiffs had absolutely no other potential claims against Defendants.

Because a "reasonable" settlement is not necessarily susceptible to a mathematical equation yielding a particularized sum, courts approve settlements falling within a "range of reasonableness." ***Newman v. Stein***, 464 F.2d 689, 693 (2d Cir. 1972); ***In re Luxottica Group***, 233 F.R.D 306, 316 (E.D.N.Y. 2006) (settlement fell within range of reasonableness even though greater recovery could have been achieved at trial); ***In re Western Union Money Transfer Litig***. 2004 WL 3709932, at *9 (E.D.N.Y. 2004) (same). Here, given the difficulty of proof, the quality of the evidence and the allocation of the burden of proof on Plaintiff, as well as legitimate concerns about the length of the lawsuit, the $75,000.00 settlement represents a reasonable

compromise with respect to contested issues and, therefore, should be approved.

### 4. Attorney Fees and Costs are Reasonable

Finally, the proposed settlement also covers Plaintiffs' attorney's fees in the amount of $20,000.31 and costs of $1,999.06. Plaintiffs can recover attorneys' fees as of right as prevailing parties pursuant to the FLSA and the New York Labor Law. See, e.g., 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see also* ***Barfield v. N.Y.C. Health & Hosps. Corp.***, 537 F.3d 132, 151 (2d Cir. 2008); ***Kahlil v. Original Old Homestead Restaurant, Inc.***, 657 F.Supp.2d 470, 473 (S.D.N.Y. 2009) ("The Court in such action *shall* ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added) (citations omitted)). A party is considered a prevailing party "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." ***Kahlil***, 657 F.Supp.2d at 473. It is not required that the plaintiff be successful on all claims; he/she must merely "demonstrate a change in the legal relationship between himself and the defendant arising from the resolution of the lawsuit." *Id.* The fact that  Plaintiff prevailed via settlement and not litigation is immaterial. *Id.* Thus, as the prevailing party, Plaintiff is entitled to an award of attorneys' fees and reasonable costs as a matter of right. *Id.*

In considering approval of an FLSA settlement, "[t]he court must also seperately assess the reasonableness of plaintiffs' attorney fees, even when the fee is negotiated as part of a settlement agreement rather than judicially determined." ***Lliguichuzhca***, 948 F.Supp.2d at 366. The purpose of the separate assessment is to make sure that "the interests of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief [counsel] procured for clients." ***Wolinsky***, 900 F.Supp.2d at 336. But while the court must approve an award of attorneys' fees and costs in a settlement of FLSA claims, "it is not the responsibility of the Court to ensure that the employer is protected from overpaying an employee's attorneys' fees and costs." ***Misiewicz v. D'Onofrio General Contractors Corp.***, 2010 WL 2545439 at *5 (E.D.N.Y. May 17, 2010)(emphasis supplied)  R&R adopted in ***Misiewicz v.D'Onofrio General Contractors Corp.***, 2010 WL 2545472 (E.D.N.Y. June 18, 2010). In the context of settling FLSA claims, courts should refrain from "disapprov[ing] a settlement on the amount of attorney's fees, since both parties assumingly ha[d] knowledge of how attorney's fees are calculated in this district and were negotiating at arm's length." *Id. See also* ***Wolinsky****, supra, at 335-36.*

When determining reasonable attorneys' fees, courts in this Circuit routinely approve FLSA settlements which provide for net 1/3 contingency fees. ***Calle v. Elite Specialty Coatings, Inc.***, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); ***Rangel v. 639 Grand St. Meat & Produce Corp.***, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)(same). At bar, Plaintiffs signed a retainer agreement which called for my firm to receive the <u>greater</u> of the 1/3 net contingency fee or the lodestar invoice. However, to promote settlement, I decided to accept a fee representing 1/3 of the net settlement even though it was lower than my lodestar invoice and be reimbursed for the costs of the case. I attach a copy of my lodestar invoice and the invoices for costs as well as the backup documentation. *See* **Exhibits 2** and **3**.

The work in this case by my Firm consisted of investigating this case, drafting a complaint, engaging in written discovery and representing Plaintiffs at the mediation and the drawn-out negotiations on the text of the settlement agreement. As my invoice reflects, my hourly rates are $450 per hour (RJW), while the rate of my junior associate, Barbara Luberadzka, is set at $125.00 (LA), as at the time she worked as a paralegal. These rates are eminently fair in the Southern District.

I have over 27 years' experience in employment litigation, and have litigated well over 400 cases of this type, the vast majority of them collective and class action cases. I have been certified as a Rule 23 class counsel in four wage and hour lawsuits: ***Jankowski v. Castaldi***, 2006 WL 118973 at*4 (E.D.N.Y. Jan. 13, 2006); ***Niemiec v. Ann Bendick Realty***, 2007 WL 5157027 at *13 (E.D.N.Y. April 23, 2007); ***Bielski v. Danco***, E.D.N.Y. Docket No: 06-cv-6542; ***Gortat v. Capala Brothers, Inc***., EDNY Docket No.: 07-cv-3629.  In the ***Gortat*** matter, I obtained a jury verdict for the named plaintiffs and the class in 2013.  I have also conducted a number of bench trials in state and federal courts as well, including ***Brassco, Inc. v. Klipo*** 2006 WL 223154 (S.D.N.Y. Jan. 27, 2006)(breach of a duty of loyalty by an employee) and ***Drozd et al. v. USA Concepts***, EDNY 09-cv-5120-RER (Jan. 20, 2017).

I have also obtained several positive decisions in the wage and hour field from the 2nd Circuit, including ***Gortat v. Capala Bros.,*** 568 Fed. Appx. 78 (2nd Cir.  2014)(affirming an award of attorney fees and costs that far exceeded an award of class damages owing to the defendants' scorched-earth litigation tactics) and ***Kroshnyi v. U.S. Pack Courier Servs***., 771 F.3d 93 (2nd Cir 2013)(holding, *inter alia*, that the SDNY erred in ruling that the statute of frauds barred plaintiffs' breach of oral contract and NYLL claims for unpaid commissions wherein the contracts were entered into for as long as employees worked for the U.S. Pack franchise and remanding for a new trial).

As regards costs, the backup documentation consists of invoices, or other documents evidencing expenses incurred. It is redacted to remove critical information, such as the firm's account numbers, credit card or bank account numbers and the like. Further, the backup documentation is arranged in the order in which the entry appears on the respective Firm invoice.

It is important to note that the date which appears on the invoices presented by my firm for payment reflects the date on which the expenses were allocated in the matter, not when they were incurred. I represent to the Court that the expenses were contemporaneously recorded or allocated to the Clients' file in the ordinary course of business.

For the foregoing reasons, the contingency fee of 1/3 of the net settlement amount as well as costs to be received by my firm in the case at bar are fair and reasonable and should be approved.

[no more text on this page]

**5.      The Parties Request That the Court Approve the Settlement**

The parties represent to the Court that the proposed settlement is fair to Plaintiff, reasonably resolves bona fide disagreements between Plaintiff and Defendants about the merits of the claims, and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not relitigated in the future.

For the reasons outlined above, the settlement reached in this matter is fair and reasonable to all parties. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *See Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y., Sept. 16, 2011).

Accordingly, the parties respectfully request that the Court approve the Agreement.

Respectfully submitted,

*/s/  Robert Wisniewski*
Robert Wisniewski

cc:     via ECF
        Rodman Honecker, Esq.
        *Counsel for Defendants*